## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

ELIZABETH MAE STOKES, and
NINA MAE STOKES,

     *Plaintiffs*,              CASE NO. 15-14177

*v.*                      DISTRICT JUDGE THOMAS LUDINGTON
                                MAGISTRATE JUDGE PATRICIA T. MORRIS

U.S. BANK TRUST, N.A., AS
TRUSTEE FOR LSF8 MASTER
PARTICIPATION TRUST, A
NATIONAL ASSOCIATION; and
CALIBER HOME LOANS, INC., A
FOREIGN CORPORATION,

     *Defendants*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS (Doc. 8)

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion to dismiss (Doc. 8) be **GRANTED** and that Plaintiffs' complaint (Doc. 1) be **DISMISSED**.

### II.    REPORT

#### A.    Introduction

This mortgage foreclosure action was originally filed in the Isabella County Circuit Court, State of Michigan; the case was removed to this Court on November 30,

1

2015, by Defendants U.S. Bank Trust, N.A., as Trustee for LSF8 Master Participation Trust and CALIBER HOME LOANS, INC. (Doc. 1 at 1-2). It was referred by United States District Judge Thomas L. Ludington to the undersigned magistrate judge for all pretrial purposes on December 8, 2015. (Doc. 5). Plaintiffs Elizabeth Mae Stokes and Nina Mae Stokes allege the following claims: (1) wrongful foreclosure, (2) breach of contract, (3) fraudulent misrepresentation, (4) slander of title, (5) unclean hands. (Doc. 1 Ex. 1 at 1-17). Plaintiffs seek a preliminary injunction, equitable mortgage, extinguishment of Defendants' interest in the Property, damages, and other relief. (*Id.* at 19-24).

On January 6, 2016, Defendants filed the instant motion to dismiss. (Doc. 8). Plaintiffs responded on February 2, 2016 (Doc. 11), and Defendants filed a reply on February 15, 2016 (Doc. 12). Therefore, the motion is ready for report and recommendation without oral argument. *See* E.D. Mich. LR 7.1(f)(1).

### B.    Factual Background

The property in question is commonly known as 6768 W. Pickard Rd., Mount Pleasant, Michigan 48858 ("Property"). (Doc. 1 Ex. 1 at 2). Plaintiffs allege that in 2005 they refinanced the property through Ocean Bank, F.S.B., issuing to that bank a mortgage on the Property to secure a loan in the amount of $65,000.00 ("Mortgage"). (*Id.* at 3). The Mortgage on the Property was assigned several times, ultimately ending up in the portfolio of Defendants. (*Id.* at 4).

Plaintiffs assert that, after several years of making payments on the Mortgage, they "came upon hard economic times" and were "temporarily unable to meet the payment obligations" of the Mortgage. (Doc. 1 Ex. 1 at 4). Plaintiffs allege that Defendants did provide a notice of default, wrongfully accelerated Plaintiffs' debt, and thus denied them the right to cure, all in violation of the Mortgage agreement. (*Id.* at 5, 9). Defendants began foreclosure proceedings in April 13, 2015, by way of notice in an Isabella County newspaper. (*Id.*). Plaintiffs aver that they could have paid the amount necessary to cure their pre-acceleration payment deficiency, but could not pay the full remaining balance on the Mortgage, as would be required to cure the default post-acceleration. (*Id.*).

Plaintiffs further allege that Defendants did not send them a Notice of Sale, and were not otherwise notified that Defendants had scheduled a foreclosure sale for the Property. (Doc. 1 Ex. 1 at 6). Had they been given notice of this sale, Plaintiffs allege that they "would have been in a much better position to preserve their interests." (*Id.*).

Plaintiffs also assert that Defendants "promised a permanent loan modification to Plaintiffs, in exchange for various payments of money, and other actions to be undertaken by Plaintiffs," and that Plaintiffs "detrimentally relied upon, and fully complied with, Defendants' promises to grant them a permanent loan modification." (Doc. 1 Ex. 1 at 7). Plaintiffs allege that they provided all necessary documentation to Defendants in a timely fashion, that Plaintiffs "were, and still are, able to afford a reasonable monthly mortgage repayment," that Defendants did not "notify Plaintiffs that they were denied for any loan modification options," but that Defendants "never permanently modified Plaintiffs' loan,

3

as explicitly promised by Defendants, and instead initiated wrongful foreclosure proceedings." (*Id*. at 8). Plaintiffs aver that they suffered a variety of harm as the result of Defendants' conduct, including but not limited to the loss of the Property. (*Id*.).

Plaintiffs argue that Defendants' conduct violated several provisions of 12 C.F.R. 1024.41, *et seq*, also known as the Real Estate Settlement Procedures Act ("RESPA"), which requires mortgage servicers to provide certain types of notice to mortgagors, and prohibits foreclosure without sufficient notice, as described more fully below. (Doc. 1 Ex. 1 at 10). Specifically, Plaintiffs allege that Defendants engaged in impermissible "dual tracking," negotiating foreclosure relief with Plaintiffs while simultaneously pursuing foreclosure on the Property. (*Id*. at 11). Plaintiffs also allege that Defendants foreclosed on their property less than 120 days following delinquency on the Mortgage. (*Id*.).

Plaintiffs further suggest that Defendants violated MCL 600.3201 *et seq*., by failing to calculate the amount due on the Mortgage. (Doc. 1 Ex. 1 at 11-12).

Plaintiffs next assert that Defendants violated the Truth in Lending Act ("TILA") 15 U.S.C. § 1601 *et seq*., by failing to notify Plaintiffs that their mortgage had been transferred within thirty days of the transfer. (Doc. 1 Ex. 1 at 12). Likewise, Plaintiffs claim that Defendants violated RESPA 12 U.S.C. § 2605(b)(1) by failing to inform Plaintiffs that the Mortgage had been transferred. (*Id*. at 13).

Plaintiffs also assert that Defendants violated the paragraph twenty-two of the Mortgage contract by failing to provide notice of the default, the action required to cure the default, the date by which the default must be cured, and notice that failure to cure the

4

default could result in acceleration of the amount owing on the Mortgage. (Doc. 1 Ex. 1 at 14). Plaintiffs also argue that Defendants are bound by the implied covenant of good faith and fair dealing. (*Id*. at 14-15).

Plaintiffs next assert that Defendants engaged in fraudulent misrepresentation, including stating that Defendants "would not begin foreclosure proceedings while the parties were actively pursuing loan modification or other financial assistance options" with knowledge that such representation was false, and with intent that Plaintiffs would rely on that representation. (Doc. 1 Ex. 1 at 16).

Plaintiffs allege that Defendants engaged in slander of title, though they do not assert how Defendants engaged in this behavior. (Doc. 1 Ex. 1 at 17-18).

Finally, Plaintiffs allege that Defendants' foreclosure on the Property is barred by the doctrine of unclean hands because of Defendants' bad faith conduct, that a preliminary injunction should issue preventing Defendants' foreclosure of the Property, and that an equitable mortgage should issue. (Doc 1. Ex. 1 at 18-24).

### C.    Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir.

2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing

6

court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Industries–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (finding that the consideration of other materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, and added nothing new" did not convert motion to dismiss into motion for summary judgment).

7

### D.   Analysis

#### 1.   Plaintiffs Cannot Obtain Redemption of the Property

Under Michigan law, "[w]hen the redemption period expires, the purchaser of a sheriff's deed is vested with 'all the right, title, and interest' in the property." *Carmack v. Bank of New York Mellon*, No. 12–cv–11669, 2012 WL 2389863, at *2 (E.D. Mich. June 25, 2012) (citing MCL § 600.3236). "The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud or irregularity." *Overton v. Mortgage Elec. Reg. Sys.*, No. 07–725429, 2009 WL 1507342, at *1 (Mich. Ct. App. 2009).

The Michigan Court of Appeals has affirmed the holding in *Overton* even where the plaintiff filed suit before expiration of the redemption period. *Awad v. General Motors Accept. Corp.*, No. 302692, 2012 WL 1415166, at *3 (Mich. Ct. App. 2012). The court reiterated that "[u]pon the expiration of the redemption period, [plaintiff] lost all right, title, and interest in the property and therefore, lost her standing to sue." *Id.*; *see also Williams v. Pledged Property II, LLC*, 508 F. App'x 465, 468 (6th Cir. 2012); *Kumar v. U.S. Bank Nat'l Ass'n*, No. 12–cv–12624, 2013 WL 783999, at *2 (E.D. Mich. Mar.1, 2013); *Costell v. Bank of New York Mellon*, No. 12–cv–15063, 2013 WL 317746, at *3 (E.D. Mich. Jan.28, 2013) ("The commencement of legal proceedings prior to the expiration of the redemption period does not preserve a mortgagor's standing to challenge the foreclosure sale."); *Allor v. Federal Home Loan Mort. Corp.*, No. 1212290,

8

2012 WL 5265738, at *2 (E.D. Mich. Oct.24, 2012); *Sylvester v. Fannie Mae*, No. 12–13186, 2012 WL 4694348, at *2 (E.D. Mich. Oct.3, 2012) ("[T]hat Plaintiff filed her suit before the redemption period expired does nothing to advance her claims"); *Chungag v. Wells Fargo Bank, N.A.*, No. 12–11073, 2012 WL 1945483, at *4 (E.D. Mich. May 30, 2012).

"[A] plaintiff-mortgagor must meet a 'high standard' in order to have a foreclosure set aside after the lapse of the statutory redemption period." *Conlin v. MERS*, 714 F.3d 355, 359–60 (6th Cir. 2013). Finally, the Sixth Circuit has emphasized that any alleged fraud or irregularity "must relate to the foreclosure procedure itself." *Id*. at 360 (quotation omitted). As described more fully below, Plaintiffs must identify some fraud or irregularity in the foreclosure procedure if they seek return of the Property, and are otherwise limited solely to damages.

In this case, the parties agree that the Property was sold at a sheriff's sale on either May 14 or 15 of 2015. (Doc. 1 Ex. 1 at 4, Doc. 8 at 6). Likewise, the parties stipulate that the redemption period expired on November 14, 2015. (Doc. 1 Ex. 1 at 6, Doc. 8 at 6). Plaintiffs allege that Defendants engaged in fraud by way of promising a loan modification with the intention to defraud, and demanded that Plaintiffs resubmit their applications several times, misleading the Plaintiffs as to the status of their modification request, such that Plaintiffs would not challenge the foreclosure process. (Doc. 1 Ex. 1 at 5-9, Doc. 11 at 5-6). This alleged practice is sometimes referred to as "dual tracking," which has been described as "a common tactic by banks that institute foreclosure

9

proceedings at the same time that a borrower in default seeks a loan modification." *Kloss v. RBS Citizens, N.A.*, 996 F. Supp. 2d 574, 585 (E.D. Mich. 2014) (citation omitted).

Despite Plaintiffs' attempt to merge the loan modification process into the foreclosure process, case law in this district holds that those two processes are quite separate. Numerous courts in this circuit have held that "dual tracking violations relate to the loan modification process rather than the foreclosure process," therefore even if accepted as true, Plaintiffs' allegation of dual tracking cannot demonstrate a "fraud or irregularity" necessary to expand the redemption period. *Kloss*, 996 F. Supp. 2d at 585; *see also Bey v. LVN Corp.*, No. 14-13723, 2015 WL 4546752, at *11 (E.D. Mich. July 28, 2015); *Boluch v. J.P. Morgan Chase Band*, No. 14-14705, 2015 WL 1952285, at *2 (E.D. Mich. Apr. 29, 2015); *Elezaj v. U.S. Bank, Nat. Ass'n*, No. 14-CV-10485, 2014 WL 4965906, at *5 (E.D. Mich. Oct. 3, 2014). The Sixth Circuit Court of Appeals itself has likewise distinguished between "oral assurances" made pursuant to negotiations about the mortgage contract, and fraud relating to the foreclosure process. *Williams*, 508 F. App'x at 468. Because Plaintiffs have not pointed to any fraud or irregularity in the foreclosure process whatsoever, they are not entitled to tolling of the redemption period, and cannot recover ownership of the Property.

## 2.    RESPA

Plaintiffs next assert that Defendants violated RESPA, "a consumer protection statute, which Congress passed in order to reform the real estate settlement process. The statute was intended to ensure that consumers received information about settlement

10

costs, and to protect them from high settlement fees and the potentially abusive practices of providers." *Augenstein v. Coldwell Banker Real Estate LLC*, No. 2:10-CV-191, 2011 WL 3837096, at *2 (S.D. Ohio Aug. 30, 2011).

The Court turns to Plaintiffs' alleged RESPA violations which might fall under 12 C.F.R. §1024.41. That portion of the statute deals with the submission, consideration, and adoption or rejection of applications for mortgage relief. As a prerequisite for a claim under 12 C.F.R. § 1024.41(g), a party must allege that they "[a] complete loss mitigation application." 12 C.F.R. § 1024.41(b)(1). Failure to submit a complete loss mitigation application is fatal to claims brought under 12 C.F.R. § 1024.41)(g). *See Burns v. Deutsche Bank Nat. Trust Co.*, No. 1:15-CV-264, 2015 WL 4903422, at *2 (W.D. Mich. Aug. 17, 2015) ("Section 1024.41(g) does not apply, however, because Plaintiffs do not allege that they submitted a complete loss-mitigation application more than 37 days prior to the foreclosure sale."). Likewise, 12 C.F.R. § 1024.41(b), (c), (d), (e), (h), (i), and (j) deal with loss mitigation applications, and thus cannot offer any relief to Plaintiffs.

Insofar as Plaintiffs may wish to raise a claim under 12 C.F.R. § 1024.41(f), that provision provides that "[a] servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless a borrower's mortgage loan obligation is more than 120 days delinquent." The parties agree that Defendants' first filing initiating the foreclosure process was on April 13, 2015, when notice of the foreclosure sale was published in the Morning Sun newspaper. (Doc. 1 Ex. 1 at 11, Doc. 8 at 8). Defendants attach the notice of default allegedly mailed to Plaintiffs

on January 5, 2015, notifying Plaintiffs that they had defaulted on payments on the Mortgage as of October 29, 2014, and that they had failed to make the requisite payments throughout October, November, and December of 2014. (Doc. 8 Ex. F). Plaintiffs do not set forth the date upon which they defaulted on the Mortgage. Accepting that Defendants' attached notice of default is accurate, some 135 days passed between October 29, 2014, the date on which Plaintiffs first missed a mortgage payment, and March 13, 2015, the date on which Defendants initiated foreclosure proceedings via newspaper advertisement. Therefore, no violation of 12 C.F.R. § 1024.41(f) can be found.

Plaintiffs' complaint is written in general language, with little connection between statutory authority and factual allegations. Plaintiffs assert that Defendants failed to inform Plaintiffs of "their mitigation options," did not provide plaintiffs with "direct and ongoing access to servicing personnel," did not "review all of the foreclosure alternatives that may have been available to Plaintiffs," and "initiated foreclosure proceedings on Plaintiff's [sic] home less than 120 days from Plaintiffs' alleged delinquency." (Doc. 1 Ex. 1 at 10-11). While Plaintiffs make no reference to 12 C.F.R. § 1024.40 in their complaint, it is evident that the allegations discussed here are derived from that provision. Specifically, 12 C.F.R. § 1024.40 provides that

> A servicer shall maintain policies and procedures that are reasonably designed to achieve the following objectives:
> (1) Assign personnel to a delinquent borrower by the time the servicer provides the borrower with the written notice required by§ 1024.39(b), but in any event, not later than the 45th day of the borrower's delinquency.
> (2) Make available to a delinquent borrower, via telephone, personnel assigned to the borrower as described in paragraph (a)(1) of this section to respond to the

12

borrower's inquiries, and as applicable, assist the borrower with available loss mitigation options until the borrower has made, without incurring a late charge, two consecutive mortgage payments in accordance with the terms of a permanent loss mitigation agreement.

12 C.F.R. § 1024.40(a)(1)-(2). Subsection (b) provides that mortgage servicers must

institute policies to effectuate the goals set forth in subsection (a), including

Functions of servicer personnel. A servicer shall maintain policies and procedures reasonably designed to ensure that servicer personnel assigned to a delinquent borrower as described in paragraph (a) of this section perform the following functions:
(1) Provide the borrower with accurate information about:
    (i) Loss mitigation options available to the borrower from the owner or assignee of the borrower's mortgage loan;
    (ii) Actions the borrower must take to be evaluated for such loss mitigation options, including actions the borrower must take to submit a complete loss mitigation application, as defined in § 1024.41, and, if applicable, actions the borrower must take to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program offered by the servicer;
    (iii) The status of any loss mitigation application that the borrower has submitted to the servicer;
    (iv) The circumstances under which the servicer may make a referral to foreclosure; and
    (v) Applicable loss mitigation deadlines established by an owner or assignee of the borrower's mortgage loan or § 1024.41.
(2) Retrieve, in a timely manner:
    (i) A complete record of the borrower's payment history; and
    (ii) All written information the borrower has provided to the servicer, and if applicable, to prior servicers, in connection with a loss mitigation application;
(3) Provide the documents and information identified in paragraph (b)(2) of this section to other persons required to evaluate a borrower for loss mitigation options made available by the servicer, if applicable; and
(4) Provide a delinquent borrower with information about the procedures for submitting a notice of error pursuant to § 1024.35 or an information request pursuant to § 1024.36.

12 C.F.R. § 1024.40(b)(1)-(4). What Plaintiffs do not acknowledge is that 12 C.F.R. §

1024.40 provides no private right of action whatsoever, thus individuals may not bring actions for damages based on that section of RESPA. *See Schmidt v. PennyMac Loan Servs., LLC*, 106 F. Supp. 3d 859, 871 (E.D. Mich. 2015) (discussing the regulatory history of 12 C.F.R. § 1024.40 and finding no intention to create a private right of action). Plaintiffs' claims arising out of 12 C.F.R § 1024.40 must fail.

Plaintiffs also attempt to raise a claim under 12 U.S.C. § 2605, which provides that mortgage servicers must notify borrowers of "in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1). The statute permits a private right of action to collect "actual damages to the borrower as the result of the failure," along with "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1)(A)-(B).

Plaintiffs' claim suffers from several defects. First, Plaintiffs do not even allege that the servicing of their Mortgage was transferred. This defect alone is fatal to any claim under 12 U.S.C. § 2605(b)(1). Second, Plaintiffs do not allege that they suffered any particular damage as the result of Defendants' alleged violation of § 2605. They request a plethora of relief in the section of their complaint addressing § 2605, but do not set forth any facts which tie these alleged damages to Defendants' asserted failure to comply with 12 U.S.C. § 2605(b)(1). The failure to allege a plausible claim for damages resulting from Defendants' alleged violation of 12 U.S.C. § 2605 is fatal to Plaintiffs' claim under this statute. *See Tasaranta v. Homecomings Fin. LLC*, No. 09CV1666 WQH

14

JMA, 2009 WL 3055227, at *4 (S.D. Cal. Sept. 21, 2009). Plaintiffs have therefore failed to raise a claim upon which relief can be granted under any section of RESPA.

### 3.      Truth in Lending Act

Plaintiffs next assert that Defendants' actions violated TILA 15 U.S.C. § 1601 *et seq*., which provides that creditors must notify borrowers when their mortgage is transferred. 15 U.S.C. § 1641(g)(1). A claim under 15 U.S.C. § 1641(g)(1) must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Plaintiff alleges that the Mortgage was assigned to defendant LSF8 Master Participation Trust on February 27, 2014. (Doc. 1 Ex. 1 at 4). Plaintiffs did not file their complaint until November 13, 2015, well over one year after the date of the assignment. (*Id*. at 1). Consequently, Plaintiffs' TILA claim is barred by the statute of limitations.

### 4.      Breach of Contract

Plaintiffs next allege that Defendants' actions violated the Mortgage contract, which includes a provision that the lender must

> give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify, (a) the default, (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified In the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.

(Doc. 1 Ex. 1 at 14). Plaintiffs do not deny that Defendants provided notice of default, but challenge whether the "correspondence received by Plaintiffs contained all of the . . . components" required by the contract. (*Id*.).

15

Defendants again point to the notice of default allegedly mailed to Plaintiffs on January 5, 2015, which clearly states that Plaintiffs were "in default" on the Mortgage, that Plaintiffs could "cure this default by making a payment of $7,856.67 by 02/09/2015," and that "[f]ailure to cure the default on or before [February 9, 2015] may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding where applicable, and sale of the property." (Doc. 8 Ex. F). This notice of default obviously satisfies all of the criteria set forth by the relevant portion of the Mortgage contract. While Plaintiffs have no duty to rebut Defendants' factual assertions on consideration of a motion to dismiss, exhibits that contradict the assertions made in a complaint may "fatally undermine[]" those allegations. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001); *Tabankin v. Kemper Short-Term Glob. Income Fund*, No. 93 C 5231, 1994 WL 30541, at *3 (N.D. Ill. Feb. 1, 1994) ("While it is true that well-pleaded factual allegations must be taken as true at the motion to dismiss stage, we are not required to ignore facts contained in the exhibits to the complaint that undermine the plaintiff's claim."). The Court finds that Plaintiffs' allegation that Defendants did not mail to them notice of default complying with the terms of the Mortgage contract is flatly contradicted by Defendants' exhibit, and thus fails to state a claim upon which relief can be granted.

To whatever extent Plaintiffs intend to argue that Defendants violated the "implied covenant of good faith and fair dealing imposed in every contract," Michigan law

16

imposes no such obligation. Courts in this district have repeatedly rejected such claims because "Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing." *Fodale v. Waste Mgmt. of Michigan, Inc.,* 271 Mich. App. 11, 35, 718 N.W.2d 827, 841 (2006); *see also Austerberry,* No. 15–CV–13297, 2015 WL 8031857, at *8; *Fredericks v. Allquest Home Mortgage Corp.,* No. 15–10429, 2015 WL 1966856, at *4 (E.D. Mich. Apr. 30, 2015); *Cheesewright v. Bank of Am., N.A.,* No. 2:11–CV–15631, 2013 WL 639135, at *5 (E.D. Mich. Feb. 21, 2013).

Even if Michigan imposed such an obligation, it is doubtful that Plaintiffs' unsupported reference to this alleged obligation could support a claim for relief. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (alterations and internal quotation marks omitted).

Insofar as Plaintiffs attempt to argue that Defendants "breached the contract" by "[d]isingenuously negotiating loss mitigation assistance" and "[m]isleading Plaintiff [sic] about approval and extension of loss mitigation assistance as an alternative to foreclosure," this argument is likewise undeveloped and waived. Plaintiffs point to no provision of the Mortgage contract which this alleged conduct might have violated. It is not the Court's role to develop a party's claims on their behalf. *See United States v. Phibbs*, 999 F.2d 1053, 1080 (6th Cir. 1993) ("[I]t is not our function to craft a[ party's]

17

arguments.").

### 5.    Fraudulent Misrepresentation

Plaintiffs next assert that Defendants engaged in fraudulent misrepresentation, by making "representations" that "were false statements of facts," which were "intended to induce Plaintiffs to refrain from defending the foreclosure in reliance on the representations made by Defendant." (Doc. 1, Ex. 1 at 15-17). These misrepresentations included "that [Defendants] would not begin foreclosure proceedings while the parties were actively pursuing loan modification or other financial assistance options." (*Id*. at 16).

Numerous courts in this circuit have rejected identical pleadings made by Plaintiffs' counsel for failure to state a claim upon which relief can be granted, and for failure to meet the pleading standard required for fraud claims. *See, e.g.*, *Cherney v. Fed. Nat'l Mortgage Ass'n*, No. 1:15-CV-711, 2016 WL 750352, at *5 (W.D. Mich. Feb. 26, 2016); *Phillips v. Green Tree Servicing LLC*, No. 15-13582, 2016 WL 627903, at *5 (E.D. Mich. Feb. 17, 2016); *Murphy v. Nationstar Mortgage*, LLC, No. 15-CV-11246, 2015 WL 9647535, at *5 (E.D. Mich. Dec. 8, 2015), report and recommendation adopted, No. 15-11723, 2016 WL 67602 (E.D. Mich. Jan. 6, 2016); *Williams v. Mortgage Elec. Registration Sys., Inc.*, No. CIV.A. 14-14693, 2015 WL 4635712, at *7 (E.D. Mich. July 30, 2015), report and recommendation adopted, No. 14-14693, 2015 WL 5027707 (E.D. Mich. Aug. 25, 2015); *Rimer v. Bank of New York Mellon*, No. 15-CV-11890, 2015 WL 4430292, at *5 (E.D. Mich. July 20, 2015); *Martin v. Bank of New York Mellon Corp.*,

No. 15-CV-10330, 2015 WL 7352006, at *4 (E.D. Mich. Nov. 20, 2015). Courts have also rejected numerous complaints filed by Plaintiffs' counsel which allege nearly identical claims of fraudulent misrepresentation. *See, e.g.*, *Smith v. Nationstar Mortgage,* No. 1513019, 2015 WL 7180473, at *3 (E.D. Mich. Nov. 16, 2015); *Clark v. Ocwen Loan Servicing, LLC,* No. 1:15–CV–659, 2015 WL 6159447, at *5 (W.D. Mich. Oct. 20, 2015); *Bertschy–Gallimore v. U.S. Bank Nat. Ass'n,* No. 1:15–CV–352, 2015 WL 3889260, at *6 (W.D. Mich. June 24, 2015).

Plaintiffs' fraud claim should be rejected here for the same reason. Federal Rule of Civil Procedure 9(b) provides that in alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This rule requires a plaintiff: (1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Trust Co. V. Bear Stearns & Co., Inc.,* 683 F.3d 239, 247 (6th Cir. 2012).

Likewise, under Michigan law, the elements of fraudulent misrepresentation are:

(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Hi–Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 247 N.W.2d 813, 816 (Mich. 1976) (citation omitted). Here, as in the cases cited above, Plaintiffs use vague terminology to assert that their servicer made false representations intended to induce

19

Plaintiffs to refrain from opposing the foreclosure for the duration of the loan modification process. (Doc. 1, Ex. 1 at 15-16). These claims do not identify the specific speaker, time, or location of Defendants' alleged fraud, and fail to allege fraud with particularity under both Fed. R. Civ. P. 9(b) and Michigan law. Plaintiffs' fraudulent misrepresentation claims thus fail to state a claim upon which relief can be granted.

### 6.    Slander of Title

Plaintiffs also allege that Defendants slandered their title in the Property. (Doc. 1 Ex. 1 at 17-18). Plaintiffs' claim that "Michigan recognizes slander of title claims both in statute . . . and at common law," that "[a]s a result of Defendants' slander of title to their home, Plaintiffs have suffered special damages, including . . . attorney's fees . . . impairment of marketability and/or saleability of their home . . . [and] loss of interest in the . . . Property." (*Id*. at 17). They also assert that they suffered exemplary damages as the result of this conduct, including "humiliation and sense of outrage . . . indignity resulting from the foreclosure of their home . . . [and] emotional distress." (*Id*.).

"Under both common law and Michigan Compiled Laws § 565.108, 'a plaintiff must show falsity, malice, and special damages, *i.e.*, that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages.'" *Derbabian v. Bank of Am., N.A.*, 587 F. App'x 949, 958 (6th Cir. 2014) (quoting *B & B Inv. Grp. v. Gitler*, 229 Mich. App. 1, 581 N.W.2d 17, 20 (1998)). Plaintiffs do not establish that Defendant made any utterance which could count as slander, much less demonstrating the falsity of such statement and the malice behind it.

20

Likewise, while Plaintiffs assert special damages, they make no effort to connect these alleged damages to Defendants' alleged conduct. These utterly threadbare assertions fail to state a claim upon which relief can be granted. *See Phillips*, No. 15-13582, 2016 WL 627903, at *5 (dismissing an identical claim raised by Plaintiffs' counsel); *Upshaw v. Green Tree Servicing LLC*, No. 15-CV-13866, 2015 WL 9269136, at *5 (E.D. Mich. Dec. 21, 2015) (same); *Goodman v. Citimortgage, Inc.*, No. 15-12456, 2015 WL 6387451, at *5 (E.D. Mich. Oct. 22, 2015) (same).

### 7. Declaratory Relief and Unclean Hands

Plaintiffs also assert that they are entitled to declaratory relief because Defendants' foreclosure of the Property is barred by the doctrine of unclean hands. (Doc. 1 Ex. 1 at 18). Declaratory relief is a remedy, not a claim. *McCann v. U.S. Bank, N.A.*, 873 F. Supp. 2d 823, 848 (E.D. Mich. 2012). Unclean hands is an equitable doctrine which "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Stachnik v. Winkel*, 394 Mich. 375, 382, 230 N.W.2d 529 (1975). "[T]he doctrine of unclean hands is more of a defense to the foreclosure than a claim for relief," yet Plaintiffs here attempt to apply the doctrine as an affirmative claim for relief. *Soto v. Wells Fargo Bank, N.A.*, No. 11-14064, 2012 WL 113534, at *5 (E.D. Mich. Jan. 13, 2012). Unclean hands could conceivable operate as a defense to foreclosure, yet in this case the foreclosure already took place, and the redemption period has expired. Plaintiffs thus fail to state a claim for declaratory relief or under the doctrine of unclean hands.

### 8. Equitable Mortgage and Conversion to Judicial Foreclosure

Plaintiffs' next claim that they are entitled to an equitable mortgage or conversion to judicial foreclosure; however, these arguments have been thoroughly rejected by prior courts in this district. The Court finds District Judge Gershwin Drain's rejection of these arguments to be fully applicable here:

> In Plaintiffs' seventh and final claim, they request the Court "exercise its equitable powers to impose an equitable mortgage...." . . . . An equitable mortgage is appropriate where the underlying mortgage is void, such as "when one party intended to grant a secured interest but the instrument actually transferred the property in total to the other party." *In re Sutter*, 665 F.3d 722, 728 (6th Cir. 2012). In the present case, the parties' relationship is governed by a valid written agreement: the Mortgage. Thus, there is no basis for the Court to intervene and impose an equitable mortgage. Plaintiffs' request for an equitable mortgage or conversion to judicial foreclosure is dismissed.

*Upshaw*, No. 15-CV-13866, 2015 WL 9269136, at *6. *See also Phillips*, No. 15-13582, 2016 WL 627903, at *5 (rejecting Plaintiffs' counsel's request for imposition of an equitable mortgage for the same reason); *Goodman*, No. 15-12456, 2015 WL 6387451, at *5 (same).

### 9. Other Arguments

As noted above, Plaintiffs' complaint includes several arguments which are wholly underdeveloped, frequently appearing in a single sentence, and without any factual or legal support whatsoever. For example, Plaintiffs make several references to MCL 600.3201 *et seq.*, in their complaint, but do nothing to develop a claim under that statute beyond asserting that "Defendants failed to properly follow the requirements of

22

the Foreclosure process set forth in MCL 600.3201 et seq., including but not limited to, failing to properly calculate the amount claimed to be due on the date of the notice of foreclosure by including amounts not rightfully incurred including late fees, attorney fees, maintenance fees, BPO/appraisal fees, title fees, publication fees and posting fees, among other fees and costs wrongfully included." (Doc. 1 Ex. 1 at 11-12). Such a threadbare recitation of the legal elements of a claim, wholly unsupported by factual allegations which could give plausibility to those claims, cannot survive a motion to dismiss. To whatever extent Plaintiffs wish to challenge this recommendation on the basis of such underdeveloped arguments, those claims ought to be found waived. *See Phibbs*, 999 F.2d at 1080.

### 10.    Preliminary Injunction

Lastly, Plaintiffs move for the issuance of a preliminary injunction or temporary restraining order to enjoin eviction proceedings Defendants might pursue against them. (Doc. 1 Ex. 1 at 20-21).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs seeking a preliminary injunction are required to make a far more stringent showing of proof than that required to survive summary judgment. *See Farnsworth v. Nationstar Mortgage, LLC*, 569 F. App'x 421, 425 (6th Cir. 2014). Plaintiffs requesting a preliminary injunction must establish: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the

balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. A finding that there is no likelihood of success on the merits is generally fatal. *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

Plaintiffs have not raised a single valid claim against Defendants, and thus have no likelihood of success on the merits. Injunctive relief is thus not appropriate, and must be denied.

### E.    Conclusion

For the reasons stated above, the Court recommends that Defendants' motion to dismiss (Doc. 16) be **GRANTED**, and that Plaintiffs' complaint (Doc. 1) be **DISMISSED**.

### III.   REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party

may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 6, 2016                    S/ PATRICIA T. MORRIS
                                      Patricia T. Morris
                                      United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: May 6, 2016                     By s/Kristen Krawczyk
                                      Case Manager